IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Action No. 3:18-cv-280

ELAINE ROSELL, on behalf of herself and all others similarly situated,

   Plaintiffs,

v.

WORLEY CLAIMS SERVICES, LLC,

   Defendant.

**COMPLAINT WITH JURY DEMAND**

Elaine Rosell ("Plaintiff" or "Ms. Rosell") hereby files this Complaint against Worley Claims Services LLC ("Defendant" or "Worley"), on behalf of herself and all other similarly situated persons, pursuant to Section 216(b) of the Fair Labor Standards Act ("FLSA" or the "Act"), and for their cause of action state as follows:

JURISDICTION AND VENUE

1. The named representative Plaintiff resides in Mecklenburg County in this District.

2. Ms. Rosell worked for the Defendant and brings this action on behalf of herself and all others similarly situated persons.

3. Defendant is a limited liability company organized under the laws of Delaware.

4. Worley provides insurance claims services throughout the United States, including but not limited to from its locations in Hammond, Louisiana (principal place of business); Fishers, Indiana; and Charlotte, North Carolina (where the company employed the named representative Plaintiff).

5. Defendant is actively conducting business in the State of North Carolina. Defendant is therefore subject to personal jurisdiction in North Carolina for the purpose of this lawsuit.

6. Upon information and belief, Defendant has failed to secure a certificate of authority to conduct business in North Carolina, or to otherwise register an agent for service of process with the North Carolina Secretary of State.

7. Defendant's agent for service of process, as registered with the State of Delaware, is Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware.

8. This action is brought pursuant to the FLSA, 29 U.S.C. § 201 *et seq.*, and, specifically, the collective action provision of the Act, § 216(b), to remedy violations of the overtime provisions of the FLSA by Defendant, which deprived Plaintiff, as well as those similarly situated to the named Plaintiffs, of their lawful wages.

9. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

10. Venue is proper in this Court.

11. At all times material to this action, the named representative Plaintiff was an employee of Defendant, as defined by section 203(e)(1) of the FLSA, and worked for Defendant within the territory of the United States within three (3) years preceding the filing of the instant suit, as alleged in greater detail in paragraphs 18, 19, and 24.

12. The overtime provisions set forth in section 207 of the FLSA apply to Defendant. The named representative Plaintiff, as well as all those similarly situated, were covered by section 207 of the FLSA while they were employed on a salaried basis by Defendant.

13. At all times material to this action, Defendant was an enterprise engaged in commerce or in the production of goods for commerce as defined by section 203(f)(1) of the FLSA, and has an annual gross volume of sales which greatly exceeded $500,000.

14. At all times material to this action, the named representative Plaintiff, as well as all those similarly situated, were engaged in commerce.

## FACTUAL BACKGROUND

15. Aquiline Capital Partners LLC ("Aquiline"), a private equity firm based in New York, acquired a majority stake in Worley in October 2014.

16. Upon information and belief, Aquiline has slashed payroll costs to make Worley appear more profitable and to drive a higher sales price (in a future sale to a third party).

17. As set forth more fully below, Defendant has engaged and continues to engage in a centralized, widespread pattern and practice of FLSA violations and intentional schemes designed to undermine and avoid the overtime pay provisions of the FLSA on a systemic, corporate-wide basis.

18. In around November 2015, Worley acquired Charlotte-based RJMW Claims Services, Inc. ("RJMW"), a provider of daily and catastrophe residential and commercial property claims services. RJMW was founded in 1982 by its named partners, Reid, Jones, McRorie, and Williams. Worley's acquisition of RJMW was one of several recent acquisitions.

19. Ms. Rosell began working for RJMW in 2004 and continued working for Worley. Prior to its acquisition by Worley, RJMW paid Ms. Rosell for overtime hours at one and one-half the regular rate.

20. RJMW paid overtime premium pay during "CAT pay events," i.e., incidents across the United States of catastrophic weather, such as hurricanes, when Plaintiff was asked to work more than forty (40) hours in a workweek.

21. After the acquisition, Plaintiff no longer received overtime pay at one and one-half the regular rate, according to Worley's previously existing policies and practices.

22. Plaintiff and all other similarly situated persons were regularly scheduled to work forty (40) hours per week.

23. In instances of catastrophic weather and other staffing shortages, Worley required Plaintiff and all other similarly situated persons to work in excess of forty (40) hours in a workweek, without paying overtime pay.

24. On March 28, 2018, Defendant terminated Plaintiff's employment when she refused to work on Easter Sunday weekend, in excess of forty (40) hours in the given workweek and without any offer of overtime pay.

25. Worley gave Ms. Rosell less than one week of notice that she would be required to work on Easter Sunday weekend.

26. Ms. Rosell was unavailable to work over the weekend due to previously scheduled plans to spend time visiting with her adult daughter, son-in-law, and grandchildren, and to attend Easter Sunday church services, in Charleston, South Carolina.

## FAILURE TO PAY OVERTIME

27. Worley delivers insurance claims services to insurance carrier clients, such as USAA, Liberty Mutual, State Farm, and CAN Insurance (hereinafter, the "Customers").

28. Worley retains the services of individual insurance claims adjusters who work in the field and whose duties include activities such as interviewing insureds; inspecting property damage; and reviewing information to prepare damage estimates (hereinafter, "Insurance Claims Adjusters"). Worley compensates its Insurance Claims Adjusters as independent contractors (so-called "1099" contractors).

29. The Insurance Claims Adjusters are not members of this putative collective action.

30. Defendant employed the representative named Plaintiff and all other similarly situated persons as file examiners (hereinafter, "File Examiners"). Worley compensates the File Examiners on a salaried basis (so-called "W2 employees"). The duties of the File Examiners include reviewing the work product of the Insurance Claims Adjusters for accuracy and compliance with the form and content requirements put forth by the Customers. Worley submits the reports from the Insurance Claims Adjusters, as reviewed by the File Examiners, to the Customer for their separate determination of coverage.

31. For purposes of this litigation, "similarly situated persons" shall be defined to mean the File Examiners, as defined in the preceding paragraph.

32. Worley provided File Examiners with a one- to two-page "cheat sheet," unique to each Customer. These cheat sheets included checklists for the Case Examiners to use in verifying compliance with the Customer's requirements for form and content.

33. Worley assigned individual File Examiners to specific Customers. For instance, Worley assigned Ms. Rosell to CNA Insurance and Hochheim Prairie Insurance. Other File Examiners were assigned to different Customers, such as USAA.

34. Worley was able to increase efficiency by assigning File Examiners to individual Customers, as the File Examiners were able to become familiar with the unique requirements put forward by their assigned Customer(s). For instance, CNA Insurance and USAA may have separate requirements for the form and content of estimates involving roof damage.

35. The named representative Plaintiff and the other similarly situated persons shared similar duties and levels of discretion.

36. Defendant's offices in North Carolina, Louisiana, and Indiana employ approximately 30 or more File Examiners, all of whom report to the same Claims Manager, Laura

Earl. Upon information and belief, Defendant employs additional File Examiners in other locations, including but not limited to those in San Jose, California; Atlanta, Georgia; and Massachusetts.

37. The File Examiners did not manage Defendant's enterprise; customarily and/or regularly direct the work of two or more full-time employees (or their equivalent); or have the authority to hire or fire other employees. The recommendations of the File Examiners on hiring and/or firing other employees, if any, were not given particular weight by Defendant.

38. The File Examiners did not work as insurance claims adjusters. Neither the representative named Plaintiff nor any similarly situated person performed or continues to perform any of the following duties: interviewing insureds, witnesses, and/or physicians; inspecting property damage; reviewing factual information to prepare damage estimates; evaluating and making recommendations regarding coverage of claims; determining liability and total value of a claim; negotiating settlements; and/or making recommendations regarding litigation.

39. Defendant failed to pay overtime hours at one and one-half the regular rate to the named representative Plaintiff and all those similarly situated.

40. Defendants' actions, in failing to compensate the named representative Plaintiff as well as those similarly situated, in accordance with the provisions of the FLSA were willful.

41. The named representative Plaintiff, as well as all other similarly situated present and/or former employees of Defendant, were and/or are subject to the policies, conduct, and practices of Defendant set forth above.

42. Pursuant to Defendants policies and practices, Defendant has failed and continues to fail to pay Plaintiff and those similarly situated the required overtime premium pay of one and one-half times their regular rate of pay for all hours worked in excess of 40 per workweek.

43. Defendant has thereby violated provisions of the FLSA, resulting in damages to Plaintiffs and those similarly situated to Plaintiffs in the form of unpaid wages, incurred and incurring costs, and reasonable attorney's fees.

44. As a result of the overtime pay violations of the FLSA, the named representative Plaintiff, as well as those similarly situated, have suffered damages by failing to receive their lawful wages during their tenure of employment with Defendant. In addition to the amount of unpaid wages owing to the named representative Plaintiff and those similarly situated, they are also entitled to an additional amount as liquidated damages pursuant to 29 U.S.C. § 216(b) and/or prejudgment interest.

45. The named representative Plaintiff and those similarly situated are also entitled to an award of attorney's fees pursuant to 29 U.S.C. § 216(b).

46. Pursuant to 29 U.S.C. § 216(b), attached to and filed with this complaint as Exhibit A is the consent to become party-plaintiff form signed by the named representative Plaintiff in this lawsuit.

47. Defendant's actions in failing to compensate the named representative Plaintiff and other similarly situated employees of Defendant in accordance with the provisions of the FLSA were not in good faith.

48. There are numerous other similarly situated employees and former employees of Defendant who have been improperly compensated in violation of the FLSA and who would benefit from the issuance of court-supervised notice of the present lawsuit and the opportunity to join the present lawsuit.

49. Specifically, all employees and former employees of Defendant who have been employed by the Defendant as a File Examiner (as that term is defined in Paragraph 30) during the applicable statutory period should receive notice and the opportunity to join the present lawsuit.

WHEREFORE, the named representative Plaintiff, individually, and on behalf of all other similarly situated persons, pursuant to 29 U.S.C. § 216(b), pray for the following relief:

1. that process issue against Defendant and that the Defendant be required to answer within the time period provided by applicable law;
2. that the Court issue notice to all similarly situated persons;
3. that other similarly situated, past or present, employees be given the opportunity to join in this lawsuit as party-plaintiffs by filing written consents pursuant to 29 U.S.C. § 2l6(b);
4. that Plaintiff, and all others who file consents, be awarded damages in the amount of their unpaid wages and an additional equal amount as liquidated damages pursuant to 29 U.S.C. 216(b) and/or prejudgment interest;
5. that Defendant be required to pay Plaintiffs' attorney fees;
6. that Defendant be required to pay the costs and expenses of this action; and,
7. that Plaintiffs be granted such other, further and general relief to which they may show themselves entitled;
8. that a jury be impaneled to hear this cause of action at trial.

/s/ Eric Spengler _____
Eric Spengler (N.C. Bar #47165)
SPENGLER & AGANS, PLLC
1713 East Blvd., Suite B
Charlotte, NC 28203
eric@spengleraganslaw.com
(704) 910-5469 (phone)
(704) 246-4189 (fax)